UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION



Brian Evans,

Plaintiff, pro se

2080 South Ocean Drive, Suite 1505

Hallandale Beach, FL 33009

(954) 214-3076

v.

Cerberus Capital Management, L.P.;

Ralph de la Torre;

Medical Properties Trust, Inc.;

Michael Callum; and

Sanjay Shetty,

Defendants.

Civil Action No.: _____

**COMPLAINT — JURY TRIAL DEMANDED**

1

## INTRODUCTION

This action arises from years of corporate looting, asset-stripping, insider enrichment, and deliberate undercapitalization of hospitals formerly operated by Steward Health Care System. Defendants orchestrated and benefited from transactions that extracted hundreds of millions of dollars from Steward while leaving its hospitals underfunded and unable to provide basic monitoring, equipment, and staffing — including at Holy Family Hospital in Massachusetts, where Plaintiff's mother died as a direct consequence of those conditions.

The public record, congressional oversight, investigative reporting, and Steward's own bankruptcy filings confirm these facts and identify the specific sums and transactions at issue.

Plaintiff brings this action in his individual capacity and as the duly appointed administrator and personal representative of his late mother's estate. The estate was properly administered and closed, but Plaintiff remains the lawful representative and sole heir. Newly discovered information — including public records, congressional findings, and Steward's bankruptcy adversary filings — reveals for the first time the direct financial misconduct that contributed to his mother's death. Plaintiff stands ready to reopen the estate immediately should the Court require it for procedural purposes.

Plaintiff relocated to the State of Florida following his mother's death. While residing in

Florida, he was diagnosed with Post-Traumatic Stress Disorder ("PTSD") caused by the trauma of witnessing and learning the true circumstances of her death. It was also while residing in Florida that Plaintiff first discovered the newly available evidence linking Defendants' financial misconduct and undercapitalization to the unsafe conditions at Holy Family Hospital. Accordingly, both the discovery of wrongdoing and Plaintiff's resulting injury occurred within this District.

## PARTIES

Plaintiff Brian Evans is a citizen and resident of Florida.

Defendant Cerberus Capital Management, L.P. ("Cerberus") is a Delaware limited partnership with its principal place of business in New York, New York. Cerberus owned Steward Health Care during the period of the transactions described herein and received substantial dividends and distributions.

Defendant Ralph de la Torre served as CEO and later controlling owner of Steward Health Care. Public records and Steward's bankruptcy filings allege that de la Torre personally received millions of dollars in dividends and related payments, including approximately $81.5 million from a January 2021 dividend, and used portions of those funds for personal enrichment, including the purchase of a luxury yacht.

Defendant Medical Properties Trust, Inc. ("MPT") is a Maryland corporation and real-estate investment trust that entered into a 2016 sale-leaseback with Steward, providing roughly $1.25 billion in proceeds while saddling hospitals with large lease obligations.

3

Defendant Michael Callum is a former Steward executive who received approximately $10.3 million in distributions tied to Steward transactions.

Defendant Sanjay Shetty is a former Steward executive who received approximately $1.8 million in similar payments.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Florida, Defendants are citizens of states other than Florida, and the amount in controversy exceeds $75,000 exclusive of interest and costs. Defendants' financial misconduct, including the extraction of assets, diversion of hospital funds, and receipt of dividends, occurred across multiple states and internationally. Defendant Ralph de la Torre currently maintains a residence and property in Florida and has derived substantial personal benefit from the challenged transactions while residing or maintaining a presence in this State. Plaintiff was residing in Florida when he was diagnosed with Post-Traumatic Stress Disorder (PTSD), in part as a direct result of the trauma of discovering his mother's wrongful death and the misconduct that caused it. It was also in Florida that Plaintiff first discovered the factual and documentary evidence—through congressional hearings, bankruptcy filings, and investigative reports—linking Defendants' financial decisions to the unsafe hospital conditions that caused his mother's death.

Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred here. Defendants regularly conduct business and financial operations affecting this forum, and their actions caused

4

foreseeable injury within this District. Defendants' global and interstate financial misconduct, including distributions, transfers, and use of funds within and from Florida, establishes both jurisdiction and venue as proper in the Southern District of Florida.

## CORPORATE VEIL AND ALTER EGO ALLEGATIONS

Defendants Cerberus Capital Management, Ralph de la Torre, Medical Properties Trust, and other affiliated executives operated Steward Health Care as a single enterprise, commingling funds, decision-making, and control over its capital structure. Cerberus directed Steward's dividend policy and financing decisions, while de la Torre and other insiders executed those directives for personal gain. This overlapping management and financial control justify piercing the corporate veil to prevent injustice and hold all Defendants jointly and severally liable.

## EXPANDED FACTUAL NARRATIVE AND PUBLIC RECORD FINDINGS

Plaintiff incorporates the following expanded narrative based on public record evidence, congressional oversight, and investigative journalism concerning the Steward Health Care collapse and its systemic impact on patient safety.

On October 5, 2012, Plaintiff's mother, diagnosed with sleep apnea, was placed in an unmonitored recovery room at Holy Family Hospital following knee-replacement surgery. She was deprived of her CPAP and pulse-oximetry, despite clear medical

5

necessity. She was later found unresponsive at 3:15 a.m. Her death certificate listed multiple inconsistent causes of death. Dr. Ronald Marvin admitted, in the presence of witnesses, that continuous monitoring would have made a difference. A Massachusetts jury subsequently found the responsible nurse negligent.

Publicly available congressional and media reports document that such conditions were the foreseeable result of deliberate undercapitalization by Steward Health Care and its investors, including Defendants in this case.

Senator Elizabeth Warren (2024): "When private equity gets hold of health care systems, it is literally a matter of life and death, so if you drive a hospital like Steward into bankruptcy, putting patients and communities at risk, you should face real consequences."

Senator Edward Markey (2024): "In their thirst for yachts, private planes, and cash, they stole years from people's lives, ripped health care from communities, and caused death."

Senate HELP Committee (2024): "Hospital systems collapsed, workers struggled to provide care, and patients suffered and died."

PBS News (2024): "At least 2,000 other patients were put in serious risk... hospital systems collapsed, workers struggled to provide care, and patients suffered and died."

Associated Press (2024): "Workers; patients, and communities suffered and died as a result of Steward's financial mismanagement and the greed of its corporate leaders."

Boston Globe Investigative Report (2024): "Steward's financial model drained hospitals of resources, leaving them unable to afford staff and equipment — endangering patient safety."

These findings directly corroborate Plaintiff's allegations that the undercapitalization of Holy Family Hospital created deadly conditions. Plaintiff discovered the connection between Defendants' misconduct and his mother's death in 2025, making these claims timely under the discovery rule.

In 2016, Steward entered a sale-leaseback transaction with MPT providing about $1.25 billion in proceeds. Instead of reinvesting that capital, Steward and its owners paid out hundreds of millions of dollars in dividends and distributions.

A 2016 dividend of roughly $789 million resulted in Cerberus receiving about $719 million.

In January 2021, while Steward was undercapitalized, it paid another dividend of $111 million, including $81.5 million to de la Torre.

Defendants Callum and Shetty received approximately $10.3 million and $1.8 million respectively in related payouts.

7

These extractions left Steward hospitals underfunded and forced to cut staff and equipment budgets, creating unsafe conditions that public investigations have linked to preventable patient deaths.

Public records, including statements by U.S. Senators Elizabeth Warren and Edward Markey, have explicitly linked Steward Health Care's financial mismanagement and asset-stripping to unsafe patient conditions and preventable deaths. In 2024, Senators Warren and Markey issued public letters and statements condemning Steward's leadership, including Defendant de la Torre, for extracting millions in dividends and leaving Massachusetts hospitals in crisis. These findings were echoed during congressional hearings and investigative reporting by The Boston Globe, documenting how Steward's collapse resulted from corporate decisions to divert funds from patient care.

Plaintiff's mother was one of the foreseeable victims of this misconduct. She was admitted to Holy Family Hospital in Methuen, Massachusetts — a facility owned by Steward — for surgery. Despite being diagnosed with sleep apnea at that same hospital only months earlier, she was placed in an unmonitored recovery room without pulse oximetry or heart monitoring. She died from oxygen desaturation following surgery. Her death certificate listed ten separate causes of death, reflecting systemic neglect rather than an isolated medical event.

Plaintiff later learned — through public congressional records, bankruptcy filings, and investigative findings — that these fatal understaffing and equipment shortages were directly tied to Defendants' diversion of hundreds of millions of dollars in dividends and insider payouts.

## COUNT I — WRONGFUL DEATH

Plaintiff realleges paragraphs 1–25.

Under Massachusetts law (Mass. Gen. Laws ch. 229 § 2), any person whose willful, wanton, or reckless conduct causes the death of another is liable for damages.

Defendants, by extracting capital and leaving Steward hospitals dangerously underfunded, created foreseeable risks to patient safety and violated their duties to ensure adequate staffing and equipment.

Plaintiff's mother's death at Holy Family Hospital was the direct and proximate result of these conditions. She was placed in an unmonitored recovery room without oxygen or heart monitoring, despite her known diagnosis.

This was not an isolated medical error but a foreseeable outcome of Defendants' financial decisions, confirmed by congressional findings and Steward's bankruptcy filings acknowledging systemic underfunding.

9

Plaintiff brings this claim individually and, as necessary, as administrator of the decedent's estate, which he stands ready to reopen upon the Court's request.

## COUNT II — NEGLIGENCE / CORPORATE RECKLESSNESS

Plaintiff realleges paragraphs 1–31.

Defendants owed a duty to exercise reasonable care in managing the operations and financing of Steward Health Care. Through deliberate undercapitalization, asset-stripping, and insider enrichment, they breached that duty.

These acts foreseeably caused and contributed to unsafe and deadly hospital conditions. The failure to provide postoperative monitoring to Plaintiff's mother was a direct and predictable consequence of Defendants' misconduct.

The resulting death and Plaintiff's emotional trauma were the foreseeable outcomes of Defendants' gross negligence and corporate recklessness.

## COUNT III — FRAUD / MISREPRESENTATION

Plaintiff realleges paragraphs 1–36.

Defendants publicly represented that Steward was financially sound and reinvesting in patient care. Those statements were false when made, as contemporaneous records show funds were diverted to insiders.

10

For example, on or about January 14, 2021, Steward publicly announced a dividend to 'strengthen long-term operations,' while internal records show that over $100 million was diverted to insiders, including de la Torre.

Defendants knew these statements were false and intended investors, regulators, and the public to rely on them. Plaintiff and the decedent were foreseeably harmed by the resulting unsafe conditions.

## COUNT IV — UNJUST ENRICHMENT / DISGORGEMENT

Plaintiff realleges paragraphs 1–40.

Defendants were unjustly enriched by ill-gotten dividends and distributions, including:
 a. Cerberus – approx. $719 million (2016 dividend);
 b. Ralph de la Torre – approx. $81.5 million (2021 dividend);
 c. Michael Callum – approx. $10.3 million;
 d. Sanjay Shetty – approx. $1.8 million.

Retention of these funds would be inequitable and unconscionable in light of the patient harm and public detriment caused by Defendants' conduct.

5. Bankruptcy Preclusion or Derivative Standing

Defendants may claim that Steward's bankruptcy proceedings preclude this action. They do not. This case concerns what these Defendants personally stole—the deliberate looting and diversion of hospital assets for private enrichment—not any debts or obligations of

11

the bankrupt entity. The bankruptcy estate concerns corporate restructuring and creditor recovery, whereas this lawsuit addresses independent tortious conduct resulting in wrongful death and personal injury. The theft and financial misconduct by these Defendants directly contributed to the death of Plaintiff's mother and to many other preventable deaths, as now confirmed in public congressional records, Senate investigations, and national media reporting. The claims here seek to hold the individual wrongdoers accountable for their own theft and reckless financial decisions that deprived hospitals of life-saving resources and placed patients at fatal risk. Moreover, the fact that Congress, multiple U.S. Senators, and federal committees have launched investigations and publicly condemned this same conduct—now part of the official congressional record—underscores that this is a matter of public theft, systemic corruption, and loss of life, not a bankruptcy matter. The claims asserted in this Complaint are thus independent of, and unaffected by, Steward's bankruptcy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against all Defendants, jointly and severally, and award:

a. Compensatory damages in the amount of $100,000,000;

b. Punitive and exemplary damages in such amount as the Court deems just and proper;

c. Disgorgement and restitution of all ill-gotten profits described herein;

d. Equitable relief, including the imposition of a constructive trust over diverted assets;

e. Costs, interest, and any other relief deemed appropriate by the Court.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 5.1 of the Southern District of Florida, Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Brian Evans*

Brian Evans

November 8, 2025

Plaintiff, pro se

2080 South Ocean Drive, Suite 1505

Hallandale Beach, FL 33009

(954) 214-3076

Exhibit ~~B~~ A

SPOTLIGHT

# As the consequences of Ralph de la Torre's Steward reign ricochet across the world, he's settling nicely in Florida

The Spotlight Team caught up with the former Steward CEO at a dressage event.

By **Hanna Krueger and Elizabeth Koh** Globe Staff, Updated March 27, 2025, 5:53 a.m.



Ralph de la Torre took a break after watching his wife, Nicole Acosta, compete in the Global Dressage Festival in Wellington, Fla., March 7. FOR THE BOSTON GLOBE

# Exhibit 6

★ GOVERNMENT SHUTDOWN RESOURCES


ED MARKEY
UNITED STATES SENATOR FOR MASSACHUSETTS



**NEWS | PRESS**

SEPTEMBER 25, 2024
## SENATOR MARKEY APPLAUDS SENATE'S UNANIMOUS CONSENT DECISION TO HOLD DR. RALPH DE LA TORRE IN CONTEMPT OF CONGRESS

*Senate's first passage of criminal contempt resolution in more than 50 years*

Washington (September 25, 2024) - Senator Edward J. Markey (D-Mass.), chair of the Health, Education, Labor, and Pensions (HELP) Subcommittee on Primary Health and Retirement Security, released the following statement today after the U.S. Senate agreed to hold Steward Health Care CEO Dr. Ralph de la Torre in criminal contempt of Congress. The HELP Committee voted unanimously on September 19 to hold de la Torre in civil and criminal contempt of Congress – a first in modern history.

"Over the past decade, Steward, led by its founder and CEO Dr. Ralph de la Torre, and its corporate enablers, looted hospitals across the country for profit, and got rich through their greedy schemes. Hospital systems collapsed, workers struggled to provide care, and patients suffered and died. Dr. de la Torre and his corporate cronies abdicated their responsibility to these communities that they had promised to serve. Extracting hundreds of millions in profit, de la Torre used the suffering of people under Steward's care to finance his luxury lifestyle, filling his garages and hangars with fancy cars and private planes, and becoming the posterchild of callous corporate greed.

"I've requested Dr. de la Torre's appearance multiple times in front of members of the HELP Committee to answer for his corporate greed, but time and time again, he has refused and hid behind excuses. I applaud the Senate's actions today to hold Dr. de la Torre in criminal contempt of Congress. It is long past time that he be held accountable."

###

🖨 PRINT                📧 EMAIL                👍 LIKE                👍 TWEET

**PREVIOUS ARTICLE**                              **NEXT ARTICLE**

Exhibit ~~B~~ C



BRIAN EVANS
(954) 214-3076
#1505
2080 S OCEAN DR
HALLANDALE BEAC   FL 33009

2.0 LBS LTR
SHP WT: 2 LBS
DATE: 08 NOV 2025

SHIP   WILKIE D FERGUSON JR US COURTHOUSE
TO:    CLERK S OFFICE MIAMI COUTRHOUSE COM
       RM 8N09
       400 N MIAMI AVE

       MIAMI   FL 33128-1805

FL 330 9-03

UPS NEXT DAY AIR                    1
TRACKING #: 1Z 361 E83 01 4168 3578

REC'D BY _____ D.C.

NOV 10 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA - MIAMI