UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

Case No. 0:25-cv-62282-AHS

BRIAN EVANS,

Plaintiff, pro se,

v.

CERBERUS CAPITAL MANAGEMENT, L.P.;

RALPH DE LA TORRE;

MEDICAL PROPERTIES TRUST, INC.,

Defendants.

FILED BY _CwC_ D.C.

DEC 18 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**SECOND AMENDED COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Brian Evans, proceeding pro se, files this Second Amended Complaint against Defendants Cerberus Capital Management, L.P. ("Cerberus"), Ralph de la Torre, and Medical Properties Trust, Inc. ("MPT"), and alleges as follows:

**I. INTRODUCTION**

This action arises from the systematic financial looting, undercapitalization, asset-stripping, and reckless corporate conduct orchestrated by Defendants Cerberus, MPT, and Ralph de la Torre, which directly led to the degradation of medical care at hospitals

1

formerly operated by Steward Health Care System ("Steward"), including Holy Family Hospital in Methuen, Massachusetts—where Plaintiff's mother died under preventable circumstances.

For years, Defendants diverted hundreds of millions of dollars away from patient care and into dividends, real-estate extraction schemes, insider bonuses, and personal enrichment, leaving hospitals dangerously understaffed and underequipped.

Congressional investigations, federal oversight records, bankruptcy filings, and major investigative news reports confirm that Defendants' financial misconduct caused widespread patient harm, avoidable deaths, and collapse of the Steward hospital system nationwide.

Plaintiff's mother was one of the victims whose death was directly caused by Defendants' diversion of funds and the resulting collapse of basic patient-safety systems.

After the trauma of his mother's death, Plaintiff relocated to Florida, where he was subsequently diagnosed with PTSD. It was in Florida that Plaintiff first learned—through newly available public records and congressional findings—the true extent of Defendants' financial schemes and their connection to his mother's death.

This Court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. Venue is proper because Plaintiff suffered injury, discovered the wrongdoing, and continues to experience harm in the Southern District of Florida, and because Defendants are subject to personal jurisdiction in this District as set forth below.

This Second Amended Complaint consolidates and supersedes Plaintiff's First Amended Complaint and the Supplement to First Amended Complaint previously filed pursuant to Federal Rule of Civil Procedure 15(d). It is submitted to cure jurisdictional and venue deficiencies identified by the Court and does not assert any new causes of action beyond those previously pleaded.

## II. PARTIES

Plaintiff Brian Evans is an individual and a citizen of the State of Florida, residing in Broward County within the Southern District of Florida.

Defendant Cerberus Capital Management, L.P. is a Delaware limited partnership with its principal place of business at 875 Third Avenue, New York, NY 10022. Cerberus's general partner is Cerberus Capital Management GP, LLC, a Delaware limited liability company with its principal place of business in New York. Its limited partners include entities organized under Delaware and New York law. Upon investigation of Cerberus's publicly available disclosures, none of Cerberus's partners are citizens of Florida.

Defendant Ralph de la Torre is an individual who, upon information and belief, is a citizen of the State of Texas. De la Torre also maintains personal and financial ties to Florida, including real-estate presence, but his domicile is Texas. He was the CEO and principal controlling figure behind Steward Health Care, receiving tens of millions of dollars personally.

Defendant Medical Properties Trust, Inc. ("MPT") is a corporation incorporated in Maryland with its principal place of business in Birmingham, Alabama. MPT is a

3

publicly traded healthcare REIT that entered into transactions with Steward that extracted over $1.25 billion in capital that was not reinvested in patient care.

### III. SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Plaintiff also seeks equitable relief including disgorgement, injunctive relief, and the imposition of a constructive trust based on Defendants' financial misconduct resulting in death, wrongful acts, and continuing harm.

This pleading is submitted in good faith to ensure a complete and accurate record consistent with the Court's Order.

### IV. PERSONAL JURISDICTION

<u>Cerberus Capital Management, L.P.</u>

Cerberus has purposefully availed itself of the State of Florida through direct and indirect business activities, including operations conducted through affiliated entities.

Cerberus operates through Cerberus Capital Florida, LLC, an affiliated entity maintaining an office at 2850 Tigertail Avenue, Suite 550, Miami, Florida 33133, from which investment, lending, and portfolio-management activities are conducted.

Senior Cerberus investment professionals and managing directors operate from or through the Miami, Florida office and participate in investment decision-making,

financing approvals, and portfolio oversight affecting Cerberus-controlled healthcare assets.

Cerberus has completed and managed investments involving Florida-based businesses and assets, demonstrating continuous and systematic Florida contacts.

Cerberus has retained Florida-based counsel to defend this action and other related matters, further evidencing its deliberate engagement with this forum.

### Ralph de la Torre

Ralph de la Torre served as Chief Executive Officer and controlling executive of Steward Health Care System and related entities.

Under de la Torre's leadership, Steward owned and operated Rockledge Regional Medical Center, a licensed hospital located in Rockledge, Florida.

Operation of a Florida hospital required continuous executive-level decision-making, including financial approvals, staffing decisions, regulatory compliance, and contractual relationships governed by Florida law.

De la Torre's purposeful direction of activities toward Florida and his control over a Florida hospital render him subject to personal jurisdiction consistent with Florida's long-arm statute and due process.

### Medical Properties Trust, Inc.

Medical Properties Trust, Inc. owns, finances, and leases healthcare facilities located in Florida and derives substantial revenue from Florida-based assets.

5

MPT's ownership, leasing, and financial control over Florida healthcare facilities establish sufficient minimum contacts to support personal jurisdiction in this District.

## V. VENUE

Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants conduct business in this District, are subject to personal jurisdiction here, and a substantial part of the events or omissions giving rise to Plaintiff's claims were directed toward and caused injury in this District. Venue is further proper because Plaintiff resides in this District and continues to suffer harm here.

## VI. FACTUAL ALLEGATIONS

Plaintiff's mother was admitted to Holy Family Hospital in Methuen, Massachusetts, which at the time was owned and operated by Steward Health Care System ("Steward").

During the period leading up to Plaintiff's mother's death, Steward hospitals were suffering from extreme understaffing, equipment shortages, safety failures, and lapses in basic patient-monitoring protocols.

These dangerous conditions were the direct consequence of Defendants' long-term strategy of extracting massive sums of cash from Steward while depriving it of the capital necessary to provide safe and adequate patient care.

Public reports, congressional findings, and bankruptcy filings have revealed that Cerberus, MPT, and de la Torre together drained Steward of more than a billion dollars through sale-leaseback transactions, debt-inducing restructurings, and excessive insider compensation.

Plaintiff's mother suffered preventable injuries due to failed monitoring, delayed responses, and lack of adequate staffing, all of which were caused by Defendants' financial decisions.

The HELP Report, government investigations, and congressional statements confirm that Steward's hospitals were routinely unable to afford basic medical equipment, sufficient nursing staff, and essential infrastructure necessary to keep patients safe.

Plaintiff reasonably expected that a licensed hospital would provide competent, monitored, and safe medical care. Instead, the hospital operated under conditions of extreme financial deprivation engineered by Defendants.

Plaintiff's mother's condition worsened because she was not properly monitored, and her medical needs were not addressed in a timely manner. These failures were the direct result of chronic understaffing and equipment shortages tied to Defendants' extraction of operating funds.

Plaintiff's mother died under circumstances that were preventable had Steward been properly funded.

Plaintiff suffered profound emotional trauma from his mother's death, including the lasting effects of witnessing her decline and learning that her suffering was caused not by medical inevitability but by corporate misconduct.

After her death, Plaintiff relocated to Florida. While residing in Florida, Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) caused by the circumstances of his mother's death.

It was only after Plaintiff's diagnosis and the release of new investigative materials—including congressional reports, news investigations, and public disclosures—that Plaintiff learned the full extent of Defendants' misconduct and how their decisions directly caused the unsafe conditions leading to his mother's death.

Plaintiff experienced renewed trauma, emotional distress, and psychological injury as he uncovered these facts while living in the Southern District of Florida.

Multiple news outlets, including The New York Times, have reported that Defendants concealed financial crises, threatened whistleblowers, and misrepresented the hospital system's condition to regulators and staff.

Defendants' actions were part of a systematic scheme to prioritize personal enrichment over patient safety, knowingly placing patients—including Plaintiff's mother—at extreme risk.

Defendant de la Torre received tens of millions of dollars in personal compensation while hospitals under his control lacked the funds to maintain safe staffing and equipment.

Defendant Medical Properties Trust financially benefited from extracting rent payments and dividends from Steward hospitals while ignoring the foreseeable consequences of undercapitalizing essential medical facilities.

Defendant Cerberus designed the financial structure enabling these extractions, including the sale-leaseback transactions and dividend distributions that left Steward operationally crippled.

The combined effect of Defendants' conduct rendered hospitals unsafe, endangered vulnerable patients, and caused preventable deaths, including the death of Plaintiff's mother.

Defendants were aware, or deliberately indifferent to the fact, that their financial decisions would reduce hospital operating capacity, jeopardize patient safety, and lead to avoidable harm.

Plaintiff continues to suffer emotional, psychological, and financial harm as a direct and foreseeable result of Defendants' actions.

## VII. ALTER EGO, VEIL-PIERCING, AND JOINT ENTERPRISE ALLEGATIONS

Defendants Cerberus, MPT, and de la Torre operated Steward Health Care as a unified financial enterprise, abusing the corporate form to extract hundreds of millions of dollars while depriving hospitals of operating capital required for patient safety.

Cerberus controlled Steward's capital structure, dividend decisions, asset transfers, and debt obligations. Steward's operations and Cerberus's leadership overlapped, with Cerberus executives directing the flow of funds and approving multi-hundred-million-dollar distributions.

Medical Properties Trust facilitated these extractions through a 2016 sale-leaseback transaction that provided more than $1.25 billion in liquidity, which was not reinvested into patient-care systems but instead used to enrich insiders.

Ralph de la Torre personally received more than $81.5 million in distributions, while other insiders received millions more.

Multiple Cerberus-affiliated entities are registered to do business in Florida and maintain Florida registered agents, reflecting an ongoing and deliberate commercial presence in the state.

Defendants' commingling of control, capital, extraction, and overlapping decision-making supports the application of alter-ego and joint-enterprise liability.

## VIII. CAUSES OF ACTION

### CAUSE OF ACTION I

### NEGLIGENCE (AS TO ALL DEFENDANTS)

Plaintiff incorporates all preceding allegations.

Defendants owed a duty to ensure that hospitals under their control maintained adequate staffing, equipment, monitoring systems, and financial resources necessary to provide safe patient care.

Defendants breached that duty by extracting capital, diverting operating funds, undercapitalizing Steward hospitals, implementing unsafe budget cuts, and knowingly creating conditions in which patients were exposed to severe and unacceptable risks.

Defendants knew or reasonably should have known that their financial decisions would directly compromise patient safety.

As a direct result of Defendants' negligence, Plaintiff's mother did not receive adequate monitoring or timely medical intervention, which proximately caused her death.

Plaintiff suffered emotional distress, trauma, PTSD, and other damages as a direct and foreseeable consequence of Defendants' negligence.

## CAUSE OF ACTION II

## GROSS NEGLIGENCE / WILLFUL AND WANTON MISCONDUCT

## (AS TO ALL DEFENDANTS)

Plaintiff incorporates all preceding allegations.

Defendants' conduct rose far above ordinary negligence. Defendants intentionally extracted hundreds of millions of dollars from Steward hospitals while knowing that doing so would destroy patient-safety infrastructure.

Defendants disregarded repeated internal warnings, media reports, whistleblower accounts, and financial indicators showing that Steward's hospitals were dangerously unsafe.

Defendants nonetheless continued to approve dividend distributions, insider bonuses, and asset transfers even as hospital conditions deteriorated.

The foreseeable result of Defendants' conduct was patient harm and preventable deaths, including Plaintiff's mother's death.

Defendants' conduct was willful, wanton, reckless, and demonstrated a conscious disregard for human life.

## CAUSE OF ACTION III

WRONGFUL DEATH

(AS TO ALL DEFENDANTS)

Plaintiff incorporates all preceding allegations.

Plaintiff's mother died as a direct and proximate result of Defendants' actions and omissions.

Defendants' financial extractions and deliberate underfunding created conditions in which hospitals lacked necessary resources to provide safe and adequate medical care.

Defendants' actions were a substantial factor in causing the injuries that led to her death.

As a result, Plaintiff suffered loss of companionship, mental anguish, emotional pain, and the traumatic impact of witnessing the consequences of Defendants' misconduct.

Punitive damages are warranted because Defendants' conduct involved gross negligence, willful disregard for patient safety, and intentional financial extraction at the expense of vulnerable patients.

## CAUSE OF ACTION IV

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(AS TO ALL DEFENDANTS)

Plaintiff incorporates all preceding allegations.

Plaintiff suffered severe emotional distress as a direct result of witnessing and learning about the conditions in which his mother died.

The emotional distress was caused by Defendants' creation of dangerous hospital environments through reckless financial decisions.

Plaintiff's PTSD diagnosis, depression, anxiety, and trauma were foreseeable consequences of Defendants' conduct.

Plaintiff continues to suffer ongoing emotional, psychological, and financial harm.

**CAUSE OF ACTION V**

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(AS TO ALL DEFENDANTS)

Plaintiff incorporates all preceding allegations.

Defendants engaged in extreme and outrageous conduct by extracting vast sums of money from hospitals while knowing that patients would suffer and die due to unsafe conditions.

Defendants' conduct went beyond all bounds of decency tolerated in a civilized society.

Defendants acted with deliberate disregard of the high probability that their actions would result in emotional trauma to the families of deceased patients.

Plaintiff suffered severe emotional distress as a direct result of Defendants' conduct.

PRAYER FOR RELIEF

Plaintiff respectfully requests judgment in his favor, compensatory and punitive damages, equitable relief, including disgorgement and the imposition of a constructive trust, costs, and any further relief deemed just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 17, 2025

Respectfully submitted,

*/s/ Brian Evans*

Brian Evans

2080 South Ocean Drive, Unit 1505

Hallandale Beach, FL 33009

(954) 214-3076

Plaintiff, pro se

**CERTIFICATE OF SERVICE**

I certify that on the 17th day of December, 2025, I mailed a true and correct copy of the foregoing Second Amended Complaint by U.S. Mail to the following counsel of record:

Counsel for Defendant Ralph de la Torre:

Alexander Manuel Peraza, Esq.

Dimond Kaplan & Rothstein, P.A.

2665 S. Bayshore Drive, Suite PH-2B

Coconut Grove, FL 33133

14

Telephone: 305-374-1920

Email: aperaza@dkrpa.com

David Alan Rothstein, Esq.

Dimond Kaplan & Rothstein, P.A.

2665 S. Bayshore Drive, Suite PH-2B

Coconut Grove, FL 33133

Telephone: 305-374-1920

Email: drothstein@dkrpa.com

Counsel for Defendant Medical Properties Trust, Inc.:

Glen H. Waldman, Esq.

Armstrong Teasdale LLP

355 Alhambra Circle, Suite 1250

Coral Gables, FL 33134

Telephone: 305-371-8809

Email: gwaldman@atlp.com

Defendant Cerberus Capital Management, L.P.:

No attorney has appeared. Service will be made in accordance with Rule 4 through Cerberus's Registered Agent located at 1209 Orange Street, Wilmington, DE 19801

15

Dated December 17, 2025

*[signature]*

Brian Evans

2080 South Ocean Drive, Unit 1505

Hallandale Beach, FL 33009

Plaintiff, pro se

