UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-62282-CIV-SINGHAL/VALLE

BRIAN EVANS,

   *Pro Se* Plaintiff,

v.

CERBERUS CAPITAL MANAGEMENT, L.P., *et al.*,

   Defendants.

_____/

**DEFENDANTS RALPH DE LA TORRE AND MEDICAL PROPERTIES TRUST, INC.'S
JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendants Ralph de la Torre (**"Dr. de la Torre"**) and Medical Properties Trust, Inc., (**"MPT"**) (together, the **"Movants"**), pursuant Fed. R. Civ. P. 12(b)(1) and 12(b)(6), request that the Court dismiss, *with prejudice*, the Second Amended Complaint [ECF No. 61] filed by *pro se* Plaintiff Brian Evans (**"Mr. Evans"**).[1]

## INTRODUCTION

Mr. Evans initiated this action seeking redress for the death of his mother, Helen Marie Bousquet (**"Ms. Bousquet"**), resulting from alleged medical negligence. But Ms. Bousquet died in 2012 – over a decade ago. Mr. Evans has twice-before prosecuted actions seeking redress for the death of this mother, allegedly caused by medical negligence. Those actions were commenced over a decade ago – in 2013 and in 2015, respectively. Mr. Evans came away with nothing in those prior actions, and judgments were entered against him. Undeterred by those adjudications, and the passing of more than 10 years, Mr. Evans has commenced and now prosecutes this action. But for myriad reasons, his claims fail. This action should be dismissed *with prejudice*.

---

[1] The Movants jointly file this Motion to Dismiss in accordance with the Notice of Court Practice [ECF No. 31]. The Movants adopt and incorporate arguments distinct from those here and made by Defendant Cerberus Capital Management, L.P. (**"Cerberus"**) in its Mot. to Dismiss [ECF 76].

## BACKGROUND

In 2013, Mr. Evans, in his individual capacity and proceeding *pro se*, filed suit against Steward Health Care System (**"Steward"**), Dr. de la Torre (in his individual capacity and in his official capacity as CEO of Steward), Cerberus, the Holy Family Hospital (**"Holy Family"**), various doctors employed by Steward, and others. That diversity action was filed in the United States District Court for the District of Hawaii (the "**First Federal Action**") and alleged:

> In August, 2012, Plaintiff's mother, Helen Marie Bousquet, decided to go to The Holy Family Hospital [in Massachusetts], a Steward Health Care System hospital. Knowing she had Sleep Apnea, she was cleared for the routine knee surgery by her doctors.
>
> On October 5, 2012, Plaintiff's mother (Plaintiff is her only son) died following a routine knee operation when the hospital placed her in an unmonitored recovery room, dosed her out on morphine, and left her there to die despite knowing before she even walked into the hospital that she had a condition known as Sleep Apnea. There was no heart monitor, no mechanical device to monitor or alert anyone in the hospital that she was having any issues in the room whatsoever, absolutely nothing but a room and a bed, and a clicker to 'call a nurse,' that Plaintiff was told by his mother they were "ignoring," when she did click for help during a telephone call that Plaintiff had with his mother following the surgery. . . .
>
> Approximately two weeks later, nurses for the hospital protested the hospital for lack of staffing to care for its patients. Over 1,000 nurse complaints have been filed with its parent company for lack of staffing and unsafe staffing conditions in the past one year in just one of Steward Health Care Systems hospitals.[2]

Based on the foregoing, Mr. Evans asserted three claims under Massachusetts law: (1) Personal injury resulting in death; (2) Wrongful Death; and (3) Intentional Infliction of Emotional Distress, Loss of Consortium, and Loss of Love.[3]

---

[2] *See Evans v. Cerberus Capital Management, L.P., et al.*, No. 13-CV-00267 (D. Haw. Jun. 17. 2013) [ECF No. 13 ¶¶ 1–3] (First Amended Complaint), attached as **EXHIBIT 1**.

[3] *Id.* at 8–11.

The First Federal Action was transferred to the District of Massachusetts.[4] The court ultimately dismissed Mr. Evans' complaint because, in his individual capacity, he did not have standing to sue for Personal injury resulting in death and Wrongful Death and because he failed to plead facts sufficient "to support the tort claim of intentional infliction of emotional distress as to himself."[5] A Judgment of Dismissal was entered against Mr. Evans on September 24, 2014.[6]

In 2015, Mr. Evans, filed suit in Massachusetts state court, as the Administrator of The Estate of Helen Marie Bousquet, against Holy Family, Steward, Steward Medical Group, Inc., physicians and nurses that treated Ms. Bousquet at Holy Family, and the group that employed some of them – again, for alleged medical negligence that resulted in Ms. Bousquet's death (the **"State Action"**).[7] That case went to a jury trial. A directed verdict was entered for Steward and Steward Medical Group, Inc.[8] The jury found that one nurse was negligent in her care and treatment of Ms. Bousquet – but did not find that the negligence was a substantial contributing factor in causing the death of Ms. Bousquet.[9] Judgment was entered against Mr. Evans on September 17, 2018.[10]

---

[4] *See Evans v. Cerberus Capital Management, L.P., et al.*, No. 13-CV-00267 (D. Haw. Nov. 21, 2013) [ECF No. 148 at 13–15].

[5] *See Evans v. Cerberus Capital Management, L.P., et al.*, No. 13-CV-13271 (D. Mass. Sept. 24, 2014) [ECF No. 256 at 2–3] (Order), attached as **EXHIBIT 2**.

[6] *See Cerberus Capital Management, L.P.*, No. 13-CV-13271 (D. Mass. Sept. 24, 2014) [ECF No. 257] (Judgment of Dismissal), attached as **EXHIBIT 3**.

[7] *See Evans, as the Administrator of the Estate of Helen Marie Bousquet, v. Ronald A. Marvin, M.D., et al.*, No. 1577CV00569 (Mass. Super. Ct. Apr. 13, 2015) (File Ref. Nbr. 1) (Plaintiff's Complaint), attached as **EXHIBIT 4**.

[8] *See Marvin*, (Mass. Super. Ct. Sept. 7, 2018) (Endorsement on Motion for Directed Verdict).

[9] *See Marvin*, (Mass. Super. Ct. Sept. 17, 2018) (File Ref. Nbr. 94) (Verdict Slip), attached as **EXHIBIT 5**.

[10] *See Marvin*, (Mass. Super. Ct. Sept. 17, 2018) (File Ref. Nbr. 95) (Judgment on Jury Verdict), attached as **EXHIBIT 6**.

### REQUEST FOR JUDICIAL NOTICE

Movants request the Court take judicial notice of the pleadings, the dockets, and court orders in the First Federal Action and the State Action because the contents therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[11]

### THE INSTANT ACTION

More than seven years later, Mr. Evans commenced this action against Cerberus, Dr. de la Torre, and MPT (collectively, the **"Defendants"**) [ECF No. 1], alleging:

> On October 5, 2012, Plaintiff's mother, diagnosed with sleep apnea, was placed in an unmonitored recovery room at Holy Family Hospital following knee-replacement surgery. She was deprived of her CPAP and pulse-oximetry, despite clear medical necessity. She was later found unresponsive at 3:15 a.m. Her death certificate listed multiple inconsistent causes of death. Dr Ronald Marvin admitted, in the presence of witnesses, that continuous monitoring would have made a difference. A Massachusetts jury subsequently found the responsible nurse negligent.[12]

But after being directed by the Court to correct several pleading deficiencies [ECF Nos. 43, 60], Mr. Evans now proceeds on his Second Amended Complaint (**"Operative Complaint"** or **"SAC"**), in which he alleges that his mother was admitted to Holy Family Hospital in Massachusetts, which was owned and operated by Steward.[13] Mr. Evans alleges that Dr. de la Torre was the "CEO and principal controlling figure behind Steward."[14] Mr. Evans further alleges:

- that his mother "suffered preventable injuries due to failed monitoring, delayed responses, and lack of adequate staffing";

---

[11] *See* Fed. R. Evid. 201(b)(2); *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (a court may take notice of another court's order "for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."); *Kozyrev v. Ponomarenko*, 2020 WL 6135050, *5 (S.D. Fla. 2020) (taking judicial notice of a docket sheet); *Verizon Trademark Services, LLC v. Producers, Inc.*, 2011 WL 308237, *1 (M.D. Fla. 2011) (taking judicial notice of a complaint to recognize the subject matter of the litigation).

[12] Compl. [ECF No. 1 at 5–6].

[13] SAC at 6.

[14] *Id.* at 3.

4

- that her "condition worsened because she was not properly monitored, and her medical needs were not addressed in a timely manner"; and

- that she died "under circumstances that were preventable."[15]

Mr. Evans alleges that the Defendants are responsible for his mother's death because they engaged in a "long-term strategy of extracting massive sums of cash from Steward while depriving it of the capital necessary to provide safe and adequate patient care[,]" and that they did so by "drain[ing] Steward of more than a billion dollars through sale-leaseback transactions, debt-inducing restructurings, and excessive insider compensation."[16] Mr. Evans alleges that the "draining" of "more than a billion dollars" was done through a "2016 sale-leaseback transaction that provided more than $1.25 billion in liquidity, which was not reinvested into patient care systems but instead used to enrich insiders."[17] But notably absent from Mr. Evans' Operative Complaint are allegations disclosing the date of Ms. Bousquet's death (which was in 2012) or the prior jury trial rejecting his claims in the State Action.[18]

Undeterred, Mr. Evans asserts the following claims:

I – Negligence;

II – Gross Negligence / Willful and Wanton Misconduct;

---

[15] *Id.* at 7.

[16] *Id.* at 6.

[17] *Id.* at 6, 9.

[18] Movants submit that those omissions were deliberate and calculated to obfuscate the preclusion and limitations issues that Movants raise below. Movants make note of the foregoing because, while he is proceeding without counsel, Mr. Evans is a savvy and experienced *pro se* litigant. As of January 7, 2026, Mr. Evans has four other cases pending in this District and one other case pending before the Eleventh Circuit Court of Appeals—he is proceeding *pro se* in all of them. *See Evans v. Creative Artist Agency, LLC, et al.*, No. 2025-CV-25484 (S.D. Fla. Nov. 10, 2025); *Evans v. Hampton Beach Casino Ballroom, Inc., et al.*, No. 2025-CV-25491 (S.D. Fla. Nov. 24, 2025); *Evans v. City National Bank*, No. 2025-CV-62656 (S.D. Fla. Dec. 23, 2025); *Evans v. City National Bank*, No. 2025-CV-62656 (S.D. Fla. Dec. 23, 2025); *Evans v. Hampton Beach Casino Ballroom, Inc., et al.*, No. 2026-CV-20024 (S.D. Fla. Jan. 05, 2026); *Evans v. StubHub, Inc., et al.*, No. 25-13767 (11th Cir. Oct. 27, 2025).

    III    –    Wrongful Death;

    IV    –    Negligent Infliction of Emotional Distress; and

    V    –    Intentional Infliction of Emotional Distress.[19]

This Motion is proper because the Operative Complaint is infirm and cannot be cured.

## APPLICABLE LAW

"Because this is a diversity case in a Florida forum, Florida's conflict-of-laws rules control."[20] To determine which state's substantive law governs this action, Florida employs the "significant relationships test."[21] Four factors are considered when employing that test: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered."[22] Those factors are considered "according to their relative importance with respect to the particular issue."[23]

Consideration of the factors enumerated above weighs largely in favor of the application of Massachusetts law here. Massachusetts law controlled in the First Federal Action and the State Action. That is because, and what is most important here, all events complained of occurred in Massachusetts. This action is nothing more than an attempt by Mr. Evans relitigate for a *third* time the circumstances surrounding his mother's death. There is no colorable reason to apply the law of any other forum here. Accordingly, Massachusetts law applies.

---

[19] SAC at 10–13.

[20] *Mixson v. C.R. Bard Inc.*, 628 F. Supp. 3d 1159, 1162 (N.D. Fla. 2022).

[21] *Id.* (citing *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)).

[22] *Mixson*, 628 F. Supp. 3d at 1162 (citing *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)).

[23] *Mixson*, 628 F. Supp. 3d at 1162 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016)).

<u>**ARGUMENT**</u>

I. <u>**Dismissal is Proper Because Mr. Evans Fails to State a Claim**</u>

For myriad reasons explained below, the Operative Complaint is subject to dismissal because Mr. Evans has failed to state a claim.

　　A. <u>**This Action is Barred by Claim and Issue Preclusion**</u>

Disposition of the First Federal Action and the State Action bar Mr. Evans from bringing this third action based on claim and issue preclusion.[24]

　　　　1. <u>**Claim Preclusion**</u>

The law in Massachusetts is that:

> The doctrine of claim preclusion bars a party from bringing an action based on the same claim that was the subject of an earlier action between the same parties or their privies. Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action. This is so even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies.[25]

The three elements for the invocation of claim preclusion are: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the causes of action; and (3) a prior final judgment on the merits."[26] All three elements are satisfied here.

---

[24] Massachusetts law controls the analysis because neither the First Federal Action nor the State Action were "grounded on a federal question." *See Andreu v. HP Inc.*, 272 F. Supp. 3d 1329, 1332 (S.D. Fla. 2017); *see also CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) ("federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction."); *Foss v. E. States Exposition*, 67 F.4th 462, 466 (1st Cir. 2023) ("We apply federal claim preclusion law in federal question cases"); *Dawe v. Capital One Bank*, 456 F. Supp. 2d 236, 239 (D. Mass. 2006) ("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was entered.") (citation omitted).

[25] *Dawe*, 456 F. Supp. 2d at 239–40 (cleaned up) (citations and quotations omitted).

[26] *Cavic v. Am.'s Servicing Co.*, 806 F. Supp. 2d 288, 291 (D. Mass. 2011) (cleaned up) (citing *McDonough v. City of Quincy*, 452 F.3d 8, 16 (1st Cir. 2006)).

As to the identity or privity of the parties, Mr. Evans was the plaintiff in both the First Federal Action and the State Action.  Dr. de la Torre (in his individual capacity and in his official capacity as CEO of Steward) was a named defendant in the First Federal Action.  And Dr. de la Torre was in privity with Steward and Holy Family, who were named defendants in the State Action, because it is alleged that, at all pertinent times, Steward owned Holy Family and Dr. de la Torre was CEO and "principle controlling figure" of Steward.[27]  And as CEO and "principle controlling figure of Steward," Dr. de la Torre's interests were represented by Steward and Holy Family in the State Action.[28]

As to the identity of the causes of action, "Massachusetts courts use a transactional approach to determine whether two causes of action are the same for the purpose of claim preclusion. A claim is the same for claim preclusion purposes if it is derived from the same transaction or series of connected transactions."[29]  The allegations of the operative pleadings in the First Federal Action, the State Action, and in this action make plain that all three actions are derived from the same transaction or series of transactions.  Namely, the admission of Ms. Bousquet to Holy Family and the alleged medical negligence that led to her death.

---

[27] *See* SAC at 2–3

[28] *See Hermes Automation Tech., Inc. v. Hyundai Elecs. Indus. Co., Ltd.*, 915 F.2d 739, 750 (1st Cir. 1990) ("claim preclusion applies to actions between parties to the prior litigation, or between a party to the prior litigation and a person whose interests were represented by a party to the prior litigation.") (cleaned up) (citing *Roche v. Roche*, 493 N.E.2d 523, 525 (Mass. App. Ct. 1986)).

[29] *Dawe*, 456 F. Supp. 2d at 240 (cleaned up) (citing *Saint Louis v. Baystate Med. Ctr., Inc.*, 568 N.E.2d 1181, 1185 (Mass. App. Ct. 1991)).

And as to a prior final judgment on the merits, a final judgment was entered against Mr. Evans in both the First Federal Action and the State Action – upon adjudication of a motion to dismiss and after a jury trial, respectively.[30]

Because all three elements are met here, all further litigation of matters by Mr. Evans against Dr. De la Torre concerning the cause of Ms. Bousquet's death is barred, and the Operative Complaint should be dismissed with prejudice, at least as to Dr. de la Torre, on this basis alone.

### 2. Issue Preclusion

Issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies."[31] Defensive issue preclusion is appropriate if: "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment."[32] Issue preclusion based on the State Action is proper.

As to the first element, and as noted above, there was a final judgment in the State Action.

As to the second element, Mr. Evans is the party against whom estoppel is asserted, and he was the plaintiff in the State Action.[33]

---

[30] *See Saade v. Wilmington Tr., Nat'l Ass'n,* 232 N.E.3d 1192, 1195 (2024) ("dismissal for failure to state a claim operates as a dismissal on the merits with res judicata effect.") (cleaned up) (citation omitted).

[31] *Dawe*, 456 F. Supp. 2d at 240 (quoting *Heacock v. Heacock*, 520 N.E.2d 151, 153 (1988)).

[32] *Green v. Town of Brookline*, 757 N.E.2d 731, 733–34 (Mass. App. Ct. 2001)

[33] To the extent that an argument is made that Mr. Evans and Mr. Evans, as the Administrator of The Estate of Helen Marie Bousquet, are not the same party, the law is that privity exists between the plaintiff in the present action and the plaintiff in the prior action if the present plaintiff "exercised substantial control" over the plaintiff in the prior action. *See Bourque v. Cape Southport Associates*, LLC, 800 N.E.2d 1077, 1080 (Mass. App. Ct. 2004). There can be no doubt

9

As to the third and fourth elements, the issue in the State Action and the issue in this action are identical – did negligence during Ms. Bousquet's admission to Holy Family cause her death? And that essential question was answered with a resounding no. Indeed, the court entered a directed verdict in favor of the Steward defendants, and the jury answered that question in favor of Holy Family. Mr. Evans took nothing.

As such, Mr. Evans is barred from relitigating the issue of whether negligence during Ms. Bousquet's admission to Holy Family resulted in her death. That question is dispositive of this action. Accordingly, all of Mr. Evans' claims against Movants should be dismissed with prejudice.

### B. The Claims are Time-Barred

Separately, the claims Mr. Evans has pleaded are time-barred. In fact, they have been time-barred since 2016 – at the latest. The statute of limitations is three years from the time that the cause of action accrued.[34] For Mr. Evans' non-wrongful death related claims, a cause of action accrues "at the time of injury to the plaintiff."[35] And for the wrongful death claim, the cause of action accrues "when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action."[36]

---

that Mr. Evans exercised substantial control over himself in the State Action.

[34] *See* Mass. Gen. Laws Ann. ch. 260, § 2A ("actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."); Mass. Gen. Laws Ann. ch. 229, § 2 ("An action to recover damages under this section shall be commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action.").

[35] *Palandjian v. Pahlavi*, 614 F. Supp. 1569, 1573 (D. Mass. 1985).

[36] Mass. Gen. Laws Ann. ch. 229, § 2.

It goes without saying that the injury to Mr. Evans here is the emotional distress suffered because of his mother's passing *in 2012*. Mr. Evans complained of that injury via claims pleaded in the First Federal Action filed *in 2013*. And Mr. Evans knew of the factual basis for a cause of action resulting from his mother's death, at the latest, *in 2013*, when he sued Dr. de la Torre, Steward, Cerberus, Holy Family, and others for their alleged negligence that resulted in Ms. Bousquet's death. Accordingly, Mr. Evan's claims have been time-barred since, at least, 2016 – three years after he filed the First Federal Action.

Therefore, dismissal of the Operative Complaint is also proper on this basis, and because further amendment would be futile, the dismissal should be with prejudice.

### C. Mr. Evans Lacks Standing

Mr. Evans, in his individual capacity, lacks standing to bring his wrongful death claim. Massachusetts law requires that such a claim be brought by "the executor or administrator of the deceased."[37] He is neither. Mr. Evans made the same error in the First Federal Action, resulting in the dismissal of the same claim. Dismissal here too is appropriate.

### D. Mr. Evans Does Not Satisfy the Element of Actual Causation

Actual or "but-for" causation is a necessary element of all Mr. Evans' claims.[38] To adequately plead actual causation, the plaintiff must sufficiently allege that "but-for" the defendant's conduct, the harm would not have occurred.[39] Mr. Evans has not done that.

---

[37] *Id.*

[38] *See Swift v. United States*, 866 F.2d 507, 509 (1st Cir. 1989) ("As with any common law tort, a plaintiff must still carry his burden of proving negligence and causation (both actual and proximate.)"); *Geigel v. Boston Police Dep't*, 2024 WL 4728934, at *4 (D. Mass. 2024) ("the Massachusetts Wrongful Death Act 'largely incorporates common law tort principles,' such as factual and legal causation.") (quoting *Davis v. United States*, 670 F.3d 48, 53 (1st Cir. 2012)).

[39] *Doull v. Foster*, 487 Mass. 1, 8, 163 N.E.3d 976, 983 (2021) ("Another way to think about the but-for standard is as one of necessity; the question is whether the defendant's conduct was necessary to bringing about the harm.").

At bottom, the harm that Mr. Evans complains of is his mother's death. He attributes her death to "failed monitoring, delayed responses, and lack of adequate staffing."[40] Mr. Evans attempts to tie Defendants to those failures by alleging that they "extract[ed] massive sums of cash from Steward while depriving it of the capital necessary to provide safe and adequate patient care[,]" and that they did so by "drain[ing] Steward of more than a billion dollars through sale-leaseback transactions, debt-inducing restructurings, and excessive insider compensation."[41] But Mr. Evans alleges that the draining of more than a billion dollars was done through a sale-leaseback that occurred in *2016* – years after Ms. Bousquet's death.[42] Because the alleged bad acts perpetrated by the Movants allegedly occurred in 2016, years after Ms. Bousquet died, it is impossible such conduct *caused* her death. So, again, dismissal is warranted.

E. **Mr. Evans' Intentional Infliction of Emotional Distress Claim Fails**

The elements of a claim for intentional infliction of emotional distress are "(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe."[43] "This is a very high standard even at the motion to dismiss stage and requires targeted and malicious conduct directed towards the plaintiff advancing the claim."[44] The Operative Complaint is devoid of any allegations that Movants "targeted" Mr. Evans at all, let alone with "malicious conduct." Dismissal of that claim is proper.

---

[40] SAC at 7.

[41] *Id*. at 6.

[42] *Id*. at 6, 9.

[43] *Barrigas v. United States*, 2018 WL 1244780, at *9 (D. Mass. 2018) (alteration in original) (citation omitted).

[44] *Id*. (cleaned up) (citations and quotations omitted).

F.  **The SAC Does Not Comport with Pleading Requirements**

Fed. R. Civ. P. 10(b) requires that claims be stated in numbered paragraphs. *See* Fed. R. Civ. P. 10(b). The Operative Complaint is devoid of any numbered paragraphs. Dismissal on that basis is appropriate.

The Operative Complaint also violates the requirements of Fed. R. Civ. P. 8(a)(2), requiring short and plain statements – because it constitutes a shotgun pleading. Each "CAUSE OF ACTION" in the Operative Complaint "incorporates all preceding allegations" and Mr. Evans attempts to assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."[45] Those are hallmarks of shotgun pleadings. It has been said about shotgun pleadings that: "Plaintiffs should not file them, defendants should move to either dismiss them or request a more definite statement, and district courts should sua sponte strike them."[46] Dismissal for that reason is also appropriate.

II. **The Court Lacks Personal Jurisdiction Over MPT**[47]

MPT is a real estate investment trust (REIT) that invests in, owns, and leases healthcare real estate. Its principal place of business is located in Birmingham, Alabama where all of its employes are located. MPT's only connection to this litigation – based on the facts alleged by Mr. Evans – is entering a sales-leaseback transaction with Steward in 2016. MPT has no involvement

---

[45] *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (identifying the various types of shotgun pleadings); *see, e.g.*, SAC at 11 (stating that "Plaintiff incorporates all preceding allegations" and alleging "Defendants' conduct rose far above ordinary negligence.").

[46] *Mullin v. Sec'y, U.S. Dep't of Veterans Affairs*, 2025 WL 3706786, at *16 (11th Cir. 2025) (Tjoflat, J., concurring).

[47] Dr. de la Torre is not contesting the Court's jurisdiction and does not join in this argument.

in the actual medical care that is the basis of Mr. Evans' claims other than being the passive landlord of the hospital where the medical care was allegedly provided.

### A. Legal Standard

A federal court's authority is limited to defendants over which it has personal jurisdiction.[48] "[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant."[49] First, courts determine if a "plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute."[50] Second, if the long-arm statute has been satisfied, courts must determine whether exercising jurisdiction over a nonresident comports with the Due Process Clause.[51]

It is the plaintiff's burden to demonstrate the court's personal jurisdiction over the defendant.[52] The plaintiff must allege sufficient and non-conclusory facts supporting a prima facie case of personal jurisdiction.[53] If the defendant challenges personal jurisdiction with evidence, the plaintiff has the burden to rebut the evidence.[54] While reasonable inferences from conflicting evidence are drawn in the plaintiff's favor, "any doubt about the reach of the Florida long-arm statute and the Court's jurisdiction are resolved in favor of the defendant and against jurisdiction."[55] There are two categories of personal jurisdiction: general and specific.[56] Mr. Evans is unable to demonstrate personal jurisdiction over MPT under either category, and his

---

[48] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).
[49] *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022).
[50] *Id.*
[51] *Id.*
[52] *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002).
[53] *Id.*
[54] *Id.*
[55] *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019).
[56] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Operative Complaint should be dismissed with prejudice.

### B. The Court Lacks *General* Jurisdiction Over MPT

Mr. Evans is unable to establish general jurisdiction over MPT because MPT is not "at home" in the state of Florida. A corporation is subject to general jurisdiction where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[57] The "paradigm" forums for general jurisdiction are a corporation's place of incorporation and principal place of business.[58]

MPT is not a Florida corporation, it was not incorporated in Florida, nor is Florida its principal place of business. It is undisputed that MPT was incorporated in Maryland and its principal place of business in Birmingham, Alabama.[59] Put simply, MPT is not "at home" in Florida.[60]

Mr. Evans fails to allege that MPT is a Florida corporation, incorporated in Florida, or principally doing business in Florida.[61] Thus, Mr. Evans fails to establish general jurisdiction over MPT. Mr. Evans' allegation that MPT "owns, finances, and leases healthcare facilities located in Florida and derives substantial revenue from Florida-based assets" is insufficient.[62] Such minimal contact with Florida does not put MPT "at home" in Florida. Accordingly, this Court lacks general jurisdiction over MPT under Florida law.

---

[57] *Bristol-Meyers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[58] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

[59] SAC at 3.

[60] *Id.* at 127.

[61] SAC at 5-6.

[62] *Id.* at 5.

      **C.**      **The Court Lacks Specific Jurisdiction Over MPT**

Specific jurisdiction requires that the exercise of jurisdiction (1) be appropriate under Florida's long-arm statute, and (2) comport with constitutional due process.[63] Neither is satisfied because Mr. Evans' claims do not arise from any contact between MPT and Florida whatsoever.

      **1.**      **Section 48.193, Florida Statutes is Not Satisfied**

Personal jurisdiction is established using Florida's long-arm statute, section 48.193, Florida Statutes (2025). Specifically, § 48.193(1)(a) sets forth specific acts that subject a defendant to specific personal jurisdiction in Florida. Mr. Evans does not allege that MPT is subject to § 48.193, and thus his claims fail.

However, *even if* Mr. Evans had alleged personal jurisdiction under § 48.193(1)(a), he cannot establish personal jurisdiction over MPT. MPT has not committed a tortious act within this state in relation to this litigation.[64] MPT has also not caused injury to persons within Florida. There are no facts that Mr. Evans can use to establish personal jurisdiction over MPT, and the Operative Complaint does not invoke any other basis for personal jurisdiction.

      **2.**      **Personal Jurisdiction Over MPT Would Violate Due Process**

Nor does personal jurisdiction here comport with due process. To satisfy due process, a "defendant's suit-related conduct must create a substantial connection with the forum State."[65] The relevant contacts are those the defendant creates with the forum and "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[66] "In the absence of such a connection, specific jurisdiction is lacking

---

[63] *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

[64] § 48.193(1)(a)(2), Fla. Stat. (2025).

[65] *Walden*, 571 U.S. at 284.

[66] *Id.*

regardless of the extent of a defendant's unconnected activities in the State."[67]  The "plaintiff cannot be the only link between the defendant and the forum."[68]

Here, the only connection to Florida is Mr. Evans' allegation that he was residing in Florida when he (1) was diagnosed with PTSD and (2) discovered evidence regarding his mother's death.[69] Mr. Evans does not allege any meaningful connection between MPT and Florida, nor could he. There is no meaningful connection between MPT, this litigation, and Florida.  There are no facts in the Operative Complaint from which to infer that MPT could have anticipated being hailed into court in Florida by Mr. Evans.  Accordingly, exercising personal jurisdiction over MPT in Florida would violate due process, and the Operative Complaint should be dismissed with prejudice.

## CONCLUSION

Mr. Evans is now for the *third* time prosecuting an action for alleged negligence that resulted in the death of his mother.  Ms. Bousquet died in 2012.  Mr. Evans' first two actions were commenced in 2013 and 2015, respectively.  Both of those actions resulted in judgments against Mr. Evans. Now years after his last failed action, Mr. Evans files this case hoping that those adverse judgments were lost in the sands of time. But they were not.  There is no legal justification for this *third* action.  Judges and juries alike have found that Mr. Evans' claims are without merit. There is no reason why this case should be litigated again or turn out differently.  Mr. Evans' Operative Complaint should be dismissed with prejudice.

---

[67] *Waite*, 901 F.3d at 1314 (internal quotations omitted).
[68] *Walden*, 571 U.S. at 285.
[69] SAC at 2.

Date: <u>January 9, 2026</u>                                      Respectfully submitted,

| ARMSTRONG TEASDALE LLP<br>355 Alhambra Circle, Suite 1200<br>Coral Gables, Florida 33134<br>Telephone: (786) 822-3706<br><br>By: /s/ <u>Glen H. Waldman, Esq.</u><br>Glen H. Waldman, Esq.<br>Fla. Bar No. 618624<br>GWaldman@Atllp.com<br><br>*Counsel for MPT* | DIMOND KAPLAN & ROTHSTEIN, P.A.<br>Offices at Grand Bay Plaza<br>2665 South Bayshore Drive, PH-2B<br>Miami, Florida 33133<br>Telephone:    (305) 374-1920<br>Facsimile:    (305) 374-1961<br><br>By:    /s David A. Rothstein<br>David A. Rothstein, Esq.<br>Fla. Bar No. 56881<br>DRothstein@dkrpa.com<br>Alexander M. Peraza, Esq.<br>Fla. Bar No. 107044<br>APeraza@dkrpa.com<br><br>*Counsel for Dr. de la Torre* |

### CERTIFICATION OF SERVICE

The undersigned certifies that on January 9, 2026, a true and correct copy of the foregoing was served on all parties of record in compliance with Fed. R. Civ. P 5(b), by filing same with the Court's electronic-filing system and by mailing (via US Mail) and emailing same to Mr. Evans at his last known address and email address, which are:

Brian Evans
*Pro Se* Plaintiff
2080 South Ocean Drive, Suite 1505
Hallandale Beach, FL 33009
(954) 214-3076
belasvegas@yahoo.com

By:    /s David A. Rothstein
         David A. Rothstein, Esq.