# Exhibit F – Court of Appeals Decision in Evans v. Marvin

100 Mass.App.Ct. 1114
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).
Appeals Court of Massachusetts.

Brian K. EVANS, administrator,[1]
v.
Ronald A. MARVIN & others.[2]

19-P-288
|
Entered: November 22, 2021.

By the Court (Milkey, Henry & Walsh, JJ.[3])

MEMORANDUM AND ORDER
PURSUANT TO RULE 23.0

**\*1** A jury in the Superior Court returned a verdict in favor of the defendants in this medical malpractice wrongful death action. The plaintiff appeals arguing that the judge erred in failing to dismiss a juror and in failing to instruct the juror that he could not consider or share his personal experiences in deliberations. The plaintiff separately contends that the judge abused his discretion in failing to recuse himself from the case due to his wife's alleged connection to one of the defendant parties. For the reasons that follow, we affirm.

Background. The plaintiff is the son of decedent Helen Bousquet, who passed away in 2012 at Holy Family Hospital in Methuen several days after a knee replacement surgery. The plaintiff filed a wrongful death suit, alleging that his mother died as a result of negligent pre and post-operative care.[4]

At the jury trial, Bousquet's cause of death was disputed. The plaintiff contended that she died from respiratory failure caused by the coalescence of her sleep apnea and the negligent administration of postoperative narcotics. Defendants argued that her cause of death was a primary cardiac event that led to a fatal arrythmia.

Several days into trial, juror number 27 informed the judge that he had suffered a heart attack and understood that heart attacks could arise without warning and could afflict unexpected victims. The judge conducted a sidebar conference and questioned juror 27 to assess his impartiality.[5] During sidebar, the plaintiff's counsel expressed concern that juror 27 would share his perspective with the other members of the jury. Counsel expressed her opinion that the juror should be dismissed, or in the alternative, that he should be instructed not to speak to the other jurors about his experience.[6] Following these conversations and a brief recess to research the law, the judge retained juror 27, noting there was nothing to suggest he could not be impartial, and that a thorough instruction was the "less intrusive alternative."[7] The judge instructed juror 27 to put his personal views aside until the close of evidence and to avoid discussing his cardiac history with the other jurors. The juror agreed that he would do so. At the end of the sidebar and the judge's instruction to the juror, the juror returned to his seat on the jury and neither party objected. Prior to deliberations, the judge also instructed the jury as a whole that they could rely on their common sense and life experiences in considering the evidence.[8] Again, neither party objected.

**\*2** The jury found in favor of the defendants.[9] The plaintiff timely appealed to this court.

Two years passed. Then, the plaintiff discovered that the trial judge's wife may have had admitting privileges at defendant Holy Family Hospital at the time of the trial. The plaintiff promptly filed a motion for a mistrial, a motion for recusal, and a motion for a new trial arguing that the trial judge was obligated to disclose his wife's alleged relationship with defendant Holy Family and recuse himself from the case.[10] The judge denied these motions due to the plaintiff's failure to comply with Rule 9A of the Rules of the Superior Court (2020), but also noted that even had the plaintiff complied with the rule, he would have denied the motion on the merits.[11] The plaintiff filed a motion for reconsideration,

which was denied. The plaintiff did not file a notice of appeal from either of the denials relating to recusal.

Discussion. 1. Juror 27. The plaintiff argues that the judge erred in failing to dismiss juror 27 and in instructing the jury that they could rely on their life experiences, along with other relevant factors, in deciding the case. Specifically, he contends that Juror 27's personal experience of having suffered a heart attack led him to "make up his mind" about the decedent's cause of death [12] and to "inject" impermissible and "extrinsic" personal opinions into deliberations.

This claim is waived because the plaintiff's trial counsel failed to object when the judge announced his decision to keep juror 27. To preserve an error for appellate review, a party must "make a specific objection on point before the trial judge" (quotation and citation omitted). Wildlands Trust of Southeastern Massachusetts, Inc. v. Cedar Hill Retreat Center, Inc., 98 Mass. App. Ct. 775, 787 (2020). The requirement of an objection is a "fundamental principle of appellate review." Commonwealth v. Gallison, 383 Mass. 659, 669 (1981). Counsel merely expressed her concern over the situation but did not directly object. She stated: "[y]ou know, if you're inclined to keeping him, I would want an instruction that he can't go talk about that. I think he should be let go." Counsel's ambivalent statement that she thought juror 27 should be dismissed was thus insufficient to satisfy our basic requirement of appellate review.

**\*3** Even assuming counsel made a proper objection, the judge did not abuse his discretion by retaining juror 27. In evaluating a juror's impartiality "it is sufficient for the judge to inquire whether potential jurors can set aside their own opinions, properly weigh the evidence, and follow the judge's instructions." Commonwealth v. Chambers, 93 Mass. App. Ct. 806, 809 (2018). "A trial judge is vested with the discretion to discharge a juror prior to deliberations 'in the best interests of justice.' " Commonwealth v. Howard, 479 Mass. 52, 66 (2018), quoting G. L. c. 234A, § 39. "[A] determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous" (citation omitted). Chambers, 93 Mass. App. at 809.

Before deciding to keep juror 27, the judge spoke to him at length and in front of counsel to evaluate his ability to set aside his experience and remain neutral. After determining that juror 27 was capable of doing so, the judge instructed him accordingly. Juror 27 agreed to follow these instructions. Given the judge's thorough investigation and instructions, we see no error or abuse of discretion.

Nor did the judge err in instructing juror 27 and the jury as a whole, that they could bring their life experiences into the deliberation room. Our courts have recognized that it would be "unrealistic and undesirable" to "expect jurors to perform their duties without the benefit of their life experiences." Commonwealth v. Watt, 484 Mass. 742, 759 (2020). Contrary to the plaintiff's assertion, these experiences do not constitute extraneous evidence. Indeed, our courts have explicitly distinguished the two sources of information. See id. at 758-759.

2. Disclosure and recusal. The plaintiff also argues that the trial judge abused his discretion in failing to disclose his wife's affiliation with defendant Holy Family Hospital and in failing to recuse himself from the case. However, the plaintiff failed to file a notice of appeal from either of the denials of his motions regarding the issue of recusal. Accordingly, this claim is waived as the plaintiff failed to comply with Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019). See New Bedford Hous. Auth. v. Olan, 435 Mass. 364, 372 (2001). Under Rule 4 (a) (1), a notice of appeal must "be filed with the clerk of the lower court within 30 days of the date of the entry of the judgment, decree, appealable order, or adjudication." See DeLucia v. Kfoury, 93 Mass. App. Ct. 166, 170 ("A timely notice of appeal is a jurisdictional prerequisite to our authority to consider any matter on appeal").

Even if the plaintiff had filed a notice of appeal, his claim would still be untimely. "Recusal motions filed after trial are presumptively untimely at least absent a showing of good cause for tardiness" (citation omitted). Demoulas v. Demoulas, 432 Mass. 43, 50 (2000). When filing an untimely motion, the moving party must "make a strong showing that nothing could have been done at an earlier time" (citation omitted). Id. Not only is plaintiff's claim presumptively untimely, but he has also failed to make a showing of good cause for why he could not have discovered the information at issue prior to trial. [13]

**\*4** Judgment affirmed.

**All Citations**

100 Mass.App.Ct. 1114, 178 N.E.3d 906 (Table), 2021 WL 5441607

---

# Footnotes

| | |
|---|---|
| 1 | Of the estate of Helen Marie Bousquet. |
| 2 | Krisin A. Dasilva, Orthopaedics Northeast, P.C., Anne Maria Mede, Holy Family Hospital, Steward Medical Group Inc., and Steward Health Care System, L.L.C. |
| 3 | The panelists are listed in order of seniority. |
| 4 | One of the named defendants, Sridhar R. Ganda, D.O., settled with the plaintiff and was dismissed from the case prior to trial. |
| 5 | The judge had already found each individual juror to be indifferent and impartial prior to their seating. And at the beginning of trial, he stated further that the jury as a group stood indifferent. Neither party objected and the jury were sworn. |
| 6 | The plaintiff's counsel stated: "I'm also now concerned that he's going to go in and talk to the rest of the jurors about his condition. You know, if you're inclined to keeping him, I would want an instruction that he can't go talk about that. I think he should be let go." |
| 7 | The judge also stated his belief that the question of whether cardiac events could occur suddenly was "not [at] issue here." |
| 8 | The judge instructed: "Now, the final thing is that, you know, when you go in to deliberate – and I'm going to instruct you a little bit on this – it is appropriate for you to use your own common sense, your own life experiences. I mean, how else do you put into context the evidence that's been presented in this case? And that is perfectly appropriate. And to the extent that any party asks you to use your common sense, to use your life experiences and what you know of those experiences in relating to the evidence, that is appropriate." "Again, you should use your life experiences to evaluate the evidence, but it is not proper, nor should you try to put yourselves in the shoes of any of the parties in this case." |
| 9 | The jury did find that one of the defendants, a nurse, was negligent in her care and treatment of the decedent. But it went on to find that this negligence was not a substantial contributing factor in causing the decedent's death. |
| 10 | In these initial motions, the plaintiff described the relationship between the judge's wife and Holy Family as an employment relationship. However, the judge clarified the nature of the relationship in his order on the motions. |
| 11 | The judge stated: "The plaintiff's assertions that my wife is employed by Steward Holy family Hospital are simply wrong. [My wife] is currently employed by MGH, Brockton, formerly Partners Healthcare. Prior to that, [she] was employed by Greater Lawrence Family Health Center. While [she] may have had admitting privileges at Holy Family Hospital, she has never been employed there. Upon consideration pursuant to [the] |

Supreme Judicial Court's two-part test of impartiality identified in [L]ena v. Commonwealth, 369 Mass. 571 (1976), the court is confident in its impartiality."

12   The plaintiff further argues that "[t]he issue of a cardiac event and what caused it was at the gravamen of the trial."

13   Plaintiff's claim would not have succeeded even if it had been timely raised. While it may have been better practice for the judge prior to trial to reveal that his wife had admitting privileges at Holy Family Hospital, the nature of such 'privileges' was not sufficiently substantial to require the judge's recusal. See June Med. Servs. L.L.C. v. Russo, 140 S. Ct. 2103, 2112 (2020), quoting La. Rev. Stat. Ann. § 40:1061(A)(2)(a) (" 'active admitting privileges' [ ] mean[s] that the doctor must be a member in good standing of the hospital's medical staff ... with the ability to admit a patient and to provide diagnostic and surgical services to such patient' "). See also Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, 2310-2313 (2016) (discussing admitting privileges).

**End of Document**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.